CITY OF RALEIGH, A MUNICIPAL CORPORATION, IN BEHALF OF ITSELF, AND OF ALL CITIZENS OF THE MUNICIPALITY, INCLUDING THE SICK AND AFFLICTED POOR OF THE CITY OF RALEIGH, AND GRAHAM WADDELL, ONE OF THE SICK AND AFFLICTED POOR OF THE CITY OF RALEIGH, IN BEHALF OF HIMSELF AND ALL OTHER CITIZENS OF THE CITY OF RALEIGH IN THE CLASS DESIGNATED AS THE SICK AND AFFLICTED POOR OF THE CITY OF RALEIGH, v. TRUSTEES OF REX HOSPITAL, A CORPORATION, AND W. B. WRIGHT, MRS. ELIZABETH HICKS JOHNSON, MRS. ELLEN D. SHORE, J. WILBUR BUNN, AND J. W. McGEE, CONSTITUTING THE INDIVIDUAL MEMBERS OF SAID CORPORATE BOARD OF TRUSTEES.

(Filed 2 May, 1934.)

Charities B b—Act creating charitable corporation held to give court of equity power to authorize it to mortgage property to preserve its facilities.

A testator devised and bequeathed certain land and personalty in trust for the purpose of erecting and endowing a hospital for the sick and afflicted poor of a certain city, and directed that the property be conveyed to trustees for the purpose specified as soon as such trustees were named by the city. Thereafter a corporation was created for the purpose of carrying out the trust by act of the Legislature expressly providing

that the corporation should be subject to the orders of a court of equity in enforcing strict compliance with the design of the testator. The property devised was conveyed to. the corporation by the trustees named in the will, and the corporation sold the land and bought other land with the proceeds of the sale, obtaining title thereto in fee simple by deed containing no restriction on alienation or encumbrancing. The corporation erected a hospital on the land bought by it, and received donations from various persons over a period of years in an amount greatly in excess of the property devised, maintained charity wards for the sick and afflicted poor, and paid its operating expenses out of funds received from its pay patients. Thereafter the corporation sought to obtain a loan for improvements from a Federal agency, and to mortgage the corporate property to secure the loan. The city and others brought this action to restrain the corporation from obtaining the loan, and upon the hearing the trial judge found as a fact that the loan was necessary to preserve the purposes of the corporation in that pay patients would not continue to use the hospital in its present state, and therefore the source of its operating revenues would fail, and entered judgment that the corporation should proceed to obtain the loan and mortgage its property to secure same: *Held*, under the provisions of the act creating the corporation, it was to hold the property devised and donated to it subject to the orders of a court of equity, and upon the facts found the judgment of the lower court is affirmed. Whether an individual or corporate trustee holding property in fee simple subject to a charitable trust imposed by will, deed or other instrument creating the trust, has the power, with or without the approval of a court of equity, to mortgage the property to preserve the facilities for carrying out the purposes of the trust is not presented or decided by this appeal.

APPEAL by plaintiffs from *Grady, J.*, at March Term, 1934, of WAKE. Affirmed.

This is an action to restrain and enjoin the defendants from consummating a loan of money by the Public Works Administration, an agency of the government of the United States of America, to the corporate defendant, and from executing a mortgage or deed of trust on property, real or personal, owned by the corporate defendant, for the purpose of securing the payment of said loan in accordance with the terms set out in the complaint, on the ground that the corporate defendant is without power to consummate said loan, and to execute the said mortgage or deed of trust.

The action was begun on 14 March, 1934. At the trial, judgment was rendered as follows:

"This cause coming on to be heard before the undersigned, Henry A. Grady, judge presiding over the courts of the Seventh Judicial District, at the regular March Term, 1934, of Wake County Superior Court, and a jury trial having been waived, and it having been agreed between D. Staton Inscoe, attorney for the plaintiffs, and Thos. W. Ruffin, attorney for the defendants, that the court might hear the

evidence, find the facts and render judgment; and evidence having been offered by both the plaintiffs and the defendants, and the court having heard the argument of counsel, the following facts are found to be true:

1. This action was instituted by the city of Raleigh, a municipal corporation, in behalf of itself and all of its citizens, and by Graham Waddell, a person found by the court to be one of the sick and afflicted poor of the city of Raleigh, in behalf of himself and all other persons residing in the city of Raleigh belonging to the class of sick and afflicted poor of said city of Raleigh, against the trustees of Rex Hospital, a corporation, and the individual members of the board of trustees of said hospital; and the court finds that all persons interested in this controversy, who are necessary and proper parties for a determination of the questions presented, are before the court, and represented by counsel.

2. This action was brought for the purpose of securing a restraining order against the defendants, prohibiting and enjoining them from consummating a loan on the lands and property belonging to the defendant corporation from the P. W. A. Loan Corporation, a Department of the United States Government, and the pleadings filed herein will disclose the purpose for which the action was instituted and the contentions of the parties.

3. During the month of February, 1839, John Rex, of the county of Wake, died, leaving a last will and testament, which was duly probated and recorded in Will Book 24, at page 261, in the office of the clerk of the Superior Court of Wake County, which will is here referred to and incorporated as a part of this finding of fact.

Under the provisions of said will, the said John Rex devised to the trustees of Rex Hospital a twenty-one acre tract of land adjoining the city of Raleigh, and certain personal property, in trust for the purpose of erecting and endowing a hospital; that said will does not restrict in any manner the power of the trustees therein provided for to alienate or encumber said property; nor does it prohibit either expressly or impliedly the borrowing of money by said trustees and the pledging of said property as security therefor.

4. The General Assembly of North Carolina duly passed an act, authorizing the commissioners of the city of Raleigh to appoint the trustees named in said will, subject to the approval of the Supreme Court of North Carolina, said act being found in the Private Laws of 1840-41 of North Carolina, chapter 6; the original trustees of Rex Hospital, after a full investigation, according to the records hereinafter referred to, found that the twenty-one acre tract 'of land devised to them under said will was unsuitable for a hospital site or for hospital purposes; and thereupon they petitioned the court of equity, at the

October Term, 1892, of Wake County Superior Court, to allow said original trustees of Rex Hospital to sell the original 21-acre tract of land and to use the proceeds therefrom in the purchase of other property and erect a hospital thereon. In said proceeding the court, after a full consideration of the matter, entered a judgment approving the sale of said 21-acre tract of land, which judgment is recorded in judgment docket No. 7, p. 171, C. I. Docket No. 5318, and Minute Docket 1892, page 546, in the office of the clerk of Superior Court of Wake County, N. C., which records are hereby referred to and incorporated as a part of this finding of fact.

5. The sale of said 21-acre tract of land produced approximately $10,000, which money, together with private contributions made by various citizens of Wake County, was used in the year 1899 in the erection and equipment of the institution on South Street in the city of Raleigh, Wake County, North Carolina, known as Rex Hospital. The site of the present hospital was purchased from a charitable organization known as St. John's Guild of the city of Raleigh, and the deed from St. John's Guild to the trustees of said Rex Hospital amounted to a conveyance in fee simple, without any restrictions whatever, upon the power of alienation or of encumbering said property; said deed appears of record in Book 124, at page 179, in the office of the register of deeds of Wake County, and the said record is hereby made a part of this finding of fact.

6. At the present time the total investment, including lands, buildings and equipment, constituting the institution known as Rex Hospital, amounts to $222,090, of which investment the sum of only $10,000 was derived from the estate of John Rex. That various private donors, including the city of Raleigh, have invested in said institution known as Rex Hospital, the sum of $212,090 as against the trust fund of $10,000 acquired under the will of John Rex, deceased; and said fund of $10,000 derived from the estate of John Rex is merely nominal in comparison with funds contributed from other sources.

7. The expense, maintenance and upkeep of said Rex Hospital has been paid almost in its entirety through the patronage of pay patients, entering said hospital, and being sent there by the majority of the physicians of the city of Raleigh, who have consistently patronized said hospital in an effort to keep the same a going concern. That in spite of the patriotic patronage and support given it by said physicians, and by the citizens of the city of Raleigh, needing medical attention, said hospital has been hardly able to exist. The building of said hospital is old and dilapidated, and unsuitable at this time for the practice of modern medicine and surgery; and the court finds as a fact that as a result of said depreciated condition, and the inability of the defendant

corporation to provide the necessary equipment for the treatment of patients, many of the best patients, residing in the city of Raleigh, have sought hospitalization elsewhere, to the great detriment and loss of the defendant institution. During the past five-year period the court finds that only forty-six per cent of the patients cared for in said hospital were pay patients. That in addition to funds derived from these pay patients the city of Raleigh and the Duke Foundation have donated approximately $25,000 per annum towards the operation and upkeep of said hospital; and in spite of these generous donations, and owing to the facts hereinbefore and hereinafter found, said hospital is hardly able to exist under present conditions, and will probably not continue to exist unless its pay patients can be retained and increased; and unless material aid can be had from some source, said institution will cease to operate and those poor and destitute people of the city of Raleigh, for whom the original donation under the will of John Rex was intended, will lose the benefit thereof.

8. The defendant corporation, acting through its board of trustees, finds itself faced with the dire necessity of improving the physical property and adding new and up-to-date equipment to said institution; and it is found as a fact that if said board of trustees is prevented from securing the aid and assistance referred to in the answer said institution will soon cease to function and the entire property belonging to said corporation will escheat to the University of North Carolina, as provided by law; not only will the small trust fund of $10,000, donated by John Rex be forfeited, but also the tremendous sum of $212,000 contributed by the public generally and the city of Raleigh will be lost insofar as the beneficiaries named in the will of John Rex are concerned.

9. Facing the dire necessity of improving its property or forfeiting its trust, the board of trustees of Rex Hospital, applied to the United States Government, through its subsidiary, the said P. W. A. Loan Corporation, for a loan of $350,000, the proceeds of which are to be used exclusively in erecting new buildings, or remodeling the present building of Rex Hospital, and adding thereto such new and up-to-date equipment as may be required for the protection and care of the sick and afflicted poor of the city of Raleigh, including such pay patients as may be encouraged to patronize said hospital under a modernized and up-to-date equipment; and the United States Government, acting through the P. W. A. Loan Corporation has agreed to lend to said corporation said sum of $350,000, and agreed to accept as security therefor a mortgage or deed of trust upon the property of said institution, under the terms and conditions set forth in the loan application attached to the answer, marked Exhibit A, and made a part of this finding of fact.

10. The court finds as a fact that the consummation of said loan will be to the great, lasting and material advantage of all parties concerned; that if said loan is consummated and said Rex Hospital modernized, as hereinbefore referred to, the class of persons known and designated as the sick and afflicted poor of the city of Raleigh will be given free of charge, modern and efficient hospital facilities; that the public generally of the city of Raleigh, and vicinity, will be induced thereby to patronize said institution and will be attracted thereto on account of its modern and up-to-date facilities; that the income of said institution will be thus greatly augmented and increased.

The court finds as a fact that in consideration of said loan, and the resultant improvement to said hospital, now in contemplation, the city of Raleigh has agreed to contribute at least $10,000 per annum towards the operation and upkeep thereof; and the commissioners of Wake County have also agreed to contribute towards the upkeep and maintenance of said institution, and it is highly probable that private donors will be encouraged thereby to contribute towards the maintenance of said hospital. The court estimates that the income alone from pay patients will be increased at least $25,000, annually, which, together with the $10,000 annual appropriation from the city of Raleigh, will amount to $35,000 per annum, which amount is more than sufficient in itself to amortize both principal and interest of the proposed loan from the P. W. A. Loan Corporation. The amount of the loan requested is $350,000, of which $109,000 is requested as a gift or grant, for the cause of a public charitable enterprise. The proposed loan is to run for thirty years, the annual maturity or curtailment being $11,666.67, and the interest rate is four per cent per annum; the average amount required annually to amortize the entire loan will be $18,666.67; and the court finds that in all human probability the increased appropriation and income from pay patients will amount to a sum largely in excess of $35,000 per annum, thus leaving a surplus of approximately $16,333.33 over and above the amount necessary to amortize said loan. The court finds that the proposal, if consummated, will cause the hospital to be self-sustaining and the government of the United States has recognized that fact and approved said loan, under the terms and conditions as set out in the application attached to the answer, which is hereinbefore referred to and made a part of these findings of fact. The court also finds that the governing body of the city of Raleigh, the Raleigh Academy of Medicine, which comprises the majority of the leading physicians of the city of Raleigh, the various civic clubs of the city of Raleigh, and the public generally, are of the opinion that said loan ought to be approved and that the consummation thereof will be for the material benefit of Rex Hospital and of the

objects of charity for which it was originally instituted; and the court further finds as a fact that if said loan is not permitted by the court and consummated, that said hospital and those for whom it was originally instituted will suffer a serious and irreparable loss.

The changed conditions as hereinbefore indicated have so altered the situation since the year 1839, when the will of John Rex was filed for probate, that the trustees of said hospital will either have to forfeit their trust or borrow such funds as may be necessary to place the same in a condition such as is hereinbefore referred to and thereby meet the demands of the public and of the sick and afflicted poor of the city of Raleigh, for a modern, up-to-date hospital. The court finds that the borrowing of this money is an absolute necessity for the further continuation of the merciful and charitable facilities offered and extended to the public generally by this institution and as foreseen and contemplated by John Rex at the time of the execution of his last will and testament.

11. The court further finds as a fact that Rex Hospital is a public body corporate in contemplation of law and also within the purview of the ruling of the Federal Emergency Administration of Public Works.

### CONCLUSIONS OF LAW.

Upon the foregoing findings of fact the court concludes:

1. That all persons interested in this controversy are now within the jurisdiction of the court and properly before the court.

2. That the defendant, board of trustees of Rex Hospital, on account of the facts as found, and under the will of John Rex, deceased, is a public charitable institution rather than a strict charitable trust; that under the provisions of the will of said John Rex, there is no restriction upon the powers of alienation, nor is there any restriction upon the borrowing of money and the pledging of the corporate property as security for such loan; that the interest of the public generally and of the sick and afflicted poor of the city of Raleigh are sufficient, under the facts and circumstances hereinbefore found, to give to this court, in its equitable jurisdiction, the power and authority to approve the contemplated loan hereinbefore referred to, and the court does approve the same.

The court holds as a matter of law that it is absolutely necessary for said board of trustees of said hospital to consummate said loan in order to prevent a forfeiture of said property under the escheat laws of North Carolina; and the court does now hold as a matter of law that said trustees, in their corporate capacity, have the full power to accept said loan and to pledge as security therefor the physical property

now in their hands, by way of mortgage, deed of trust, or other legal instrument, and to do and perform all things necessary and proper to the consummation of said loan, according to the terms and conditions described in the pleadings; the proceeds of which are to be used solely for the purpose of improving the present hospital building and equipment, or the construction of such additional buildings and the purchase of such additional equipment as may be necessary for the carrying out of the plans submitted to the United States Government.

It is therefore on motion of Thos. W. Ruffin, attorney for the defendant, considered, ordered and adjudged:

1. That the defendant, board of trustees of Rex Hospital, a corporation, be and it is hereby authorized, empowered and directed to consummate the loan referred to in the pleadings and in this judgment, and to execute and deliver to such trustees or agency of the United States Government as may be required, a mortgage or deed of trust upon the physical property belonging to said Rex Hospital, and to execute and deliver to the same person or governmental agency, such other legal instruments as may be required, pledging said property as security to said loan, and to execute such notes or bonds as may be necessary, representing the indebtedness involved, and to do any and all things which may be found necessary to a proper and legal conclusion of said loan; and the defendant is hereby adjudged to have full power to accept said loan from the P. W. A. Corporation; and the plaintiffs' prayer for a restraining order is hereby denied, and the plaintiffs' cause of action is hereby dismissed, it being found as a fact that this action was brought solely for the purpose of restraining the defendants from consummating the said loan.

2. That the defendants recover their costs to be taxed against the plaintiffs.  HENRY A. GRADY, *Judge Presiding."*

The plaintiffs excepted to the foregoing judgment and appealed to the Supreme Court, assigning as error the holding of the court that the corporate defendant has a right to accept a loan of money from the Public Works Administration, and to secure the payment of the same by a valid mortgage or deed of trust on the property, real or personal, owned by said defendant.

*D. Staton Inscoe and W. H. Yarborough for plaintiffs.*
*Thos. W. Ruffin for defendants.*

CONNOR, J. The land situate in the city of Raleigh, on which Rex Hospital is located, was conveyed to the defendant, trustees of Rex Hospital, a corporation created by the General Assembly of this State, by a deed dated ...... day of August, 1893. This deed was executed by St.

John's Guild, a corporation organized under the laws of this State, and is duly recorded in the office of the register of deeds of Wake County, in Book 124, at page 179. By virtue of this deed, the corporate defendant, trustees of Rex Hospital, is now the owner in fee simple of said land. There is nothing in the deed, which appears in the record, which limits or restricts the title or estate of the defendant, in or to said land, or its right to convey the same by deed or mortgage. It appears, however, from the record, that the purchase price for said land was paid by the defendant out of the proceeds of the sale of a parcel of land, containing twenty-one acres, which was conveyed to the defendant by the executors of John Rex, pursuant to the provisions of his last will and testament. John Rex, a citizen of this State, and a resident of the city of Raleigh, died in 1839. His last will and testament was duly probated and recorded in the office of the clerk of the Superior Court of Wake County, and contains the following:

"It being my desire to provide a comfortable retreat for the sick and afflicted poor belonging to the city of Raleigh, in which they may have the benefit of skillful medical aid and proper attention, it is my will that a lot or parcel of land containing twenty-one acres adjoining the city of Raleigh on the southwest side, being the same purchased by me of the commissioners appointed for selling a part of the public lands, and which is comprised in the general devise of all my lands to the aforesaid Duncan Cameron and Geo. W. Mordecai in trust as before mentioned, be appropriated for the erection thereon of an infirmary or hospital for the sick and afflicted poor of the city of Raleigh and for no other use or purpose whatsoever.

"And for the endowment of said hospital as far as I have the ability to do so, it is my will that all the money belonging to me, all the debts due me, and all the rest and residue of my estate hereinbefore given, devised and bequeathed by me to the said Duncan Cameron and Geo. W. Mordecai in trust and not otherwise specially appropriated be, and they are hereby appropriated to the endowment of said hospital, and whenever the constituted authorities of the city of Raleigh shall legally appoint trustees capable in law of holding the same, then the said Duncan Cameron and Geo. W. Mordecai or the survivor of them, or the executor or executors of the survivor of them, shall convey the said lot or parcel of land and the fund accruing from the money belonging to me, the debts due and the rest and residue of my estate as above described to the said trustees, or their successors duly appointed in trust forever, for the execution and endowment of such hospital, and no other use or purpose."

After the probate of said last will and testament, the General Assembly of this State, by chapter 6, Private Laws of 1840-41, authorized

the commissioners of the city of Raleigh, to nominate, and with the approval of the Supreme Court of the State, to appoint five persons as trustees of Rex Hospital. The said persons and their successors were declared to be a body corporate by the name of the "trustees of Rex Hospital." The said corporation was authorized to receive and hold the property and effects devised, and bequeathed by John Rex by his last will and testament, and to use and apply the same to and for the purposes specified in said will, and no other, and also to receive and hold donations of lands and personal property for the purposes aforesaid.

Section 3, chapter 6, Private Laws of North Carolina, 1840-41, is as follows:

"And be it further enacted: That the commissioners of the city of Raleigh, for the time being may, at any and all times, by petition in equity in the Supreme Court, call on the said trustees for an exhibition of their accounts and doings in discharge of this trust, and such proceedings shall be summary, and the Court may make any order or orders thereupon from time to time as may be necessary to enforce a strict compliance with the design of the testator, to correct and prevent abuses, to remove or displace any trustee or trustees, who shall appear to have been guilty of any wilful default or gross neglect in the discharge of his duty, or to have become incompetent by bodily or mental infirmity; and generally to do and order what shall seem to the said Court best in the premises."

The question presented by this appeal is not whether trustees, individual or corporate, who own property, real or personal, in fee simple or absolutely, but which is subject to a charitable trust imposed thereon by the testator, grantor, or other donor in the will, deed, or other instrument by which the trust was created, in the absence of express authority contained in said will, deed or other instrument, have the power, with or without the approval of a court of competent jurisdiction, to convey said property by mortgage or deed of trust to secure money borrowed by said trustees, in good faith, to enable them to improve or add to said property, and thereby to preserve or enlarge their facilities for carrying out the charitable purpose of their testator, grantor, or donor. For obvious reasons, this question cannot be decided, and ought not to be discussed by this Court unless and until it has been properly and clearly presented for decision. See *Wright v. McGee, ante,* 52, 173 S. E., 31.

It was held by this Court in *Shannonhouse v. Wolfe,* 191 N. C., 769, 133 S. E., 93, that in the absence of authority from the grantor in the deed by which a charitable trust was created, and of the approval of a court with equitable jurisdiction, the trustees had no such power. In

that case, the trustees of a charitable trust had executed a mortgage on the land held by them to secure money borrowed by the trustees, and expended by them in the improvement of the property. It was held that the mortgage was void, because the trustees had no power to convey the land by mortgage. That case was distinguished from *Hall v. Quinn,* 190 N. C., 326, 130 S. E., 18, in which it was held that a mortgage executed by a corporate trustee to secure notes for borrowed money was valid. In the latter case, the corporate trustee was authorized by the statute by which it was created, to use and enjoy, alien, exchange, invest, convert and reinvest all its property and assets in like manner with other corporations similarly chartered. The statute was construed by this Court as authorizing the corporate trustee to mortgage as well as to sell and convey its property. In that case, the mortgage had not been approved by a court of competent jurisdiction.

In *Ellerherst v. Pythian* (Ky.), 63 S. W., 37, the question presented to the Court of Appeals of Kentucky was whether the trustees of a charitable trust created by a will, with the approval of a court of competent jurisdiction, on the facts involved in that case, had the power to mortgage the property devised and bequeathed to the trustees for the establishment and maintenance of a hospital. The judgment of the Circuit Court, which had original equitable jurisdiction, approving the mortgage, was affirmed. In that case, it was provided in the will of the testator that the trustees should report, annually, all their acts and doings to the highest court in the county in which the hospital was located, having equitable jurisdiction. In that case it is said: "It would be unfortunate if there was no power anywhere to enable the trustees to relieve the institution of its present embarrassment, and place it in a position where it can take care of the sick, and thus accomplish the beneficial purpose of the testatrix."

In the instant case, it is expressly provided by the statute by which the corporate defendant, trustees of Rex Hospital, was created, that said corporation should hold the property, real and personal, which should be conveyed to it by the executors of John Rex, pursuant to the provisions of his will, or which should be donated to it from time to time, subject to such orders as a court of equity should make. For this reason, the judgment of the Superior Court, which had original jurisdiction of this action, on the facts found by said court, approving the mortgage or deed of trust, which the corporate defendant, trustee of Rex Hospital, has agreed to execute to secure the loan to be made to it by the Public Works Administration, is

Affirmed.