T. C. FLETCHER, B. C. FLETCHER, ELIZABETH JENNINGS, J. T. FLETCHER, G. M. FLETCHER AND IDA HELEN FLETCHER, THE LAST TWO SUING BY THEIR GUARDIAN, T. C. FLETCHER, AND L. C. FLETCHER, v. ELLA V. BRAY, SALLIE S. WOODHOUSE AND ANNIE M. BAUM, EXECUTRICES OF IDA F. CARTWRIGHT, DECEASED, AND ELLA V. BRAY, SALLIE S. WOODHOUSE AND ANNIE M. BAUM.

(Filed 9 December, 1931.)

**Wills E h—Held: will conveyed life estate in lands to wife with power of disposition of standing timber for her own benefit.**

A testator left an estate including lands with timber growing thereon and devised to his wife all of his property of every kind and description for life with remainder over to his nephew and his nephew's children, the testator having no children, and by later provision of the will empowered his wife to dispose of the standing timber as she might think best. The wife sold the timber and deposited the proceeds in the bank. *Held:* by interpretation of the will it appears that the intent of the testator was to provide for his wife more particularly than his nephew and his nephew's children, and that title to the timber was severed from the fee and did not pass with the land, and the wife had the right under the terms of the will to the proceeds of the timber as her own money which she could dispose of by her will, there being no trust in favor of the remaindermen coupled with the wife's power of disposition.

CIVIL ACTION, before *Grady, J.,* at June Term, 1931, of PASQUOTANK.

G. W. Cartwright died on or about 9 October, 1922, leaving a last will and testament containing the following clauses:

2. "I give and devise to my wife, Ida F. Cartwright, all of my property of every kind and description and wheresoever situate for and during the term of her natural life, in remainder over, after the death of my said wife, Ida F. Cartwright, to T. C. Fletcher and the children of the said T. C. Fletcher, share and share alike, absolutely and in fee simple forever."

3. "It is my will and desire that my said wife, Ida F. Cartwright, shall have the privilege to dispose of any or all of the standing timber on the lands herein devised as she may think best."

Ida F. Cartwright was appointed executrix of the will. The plaintiffs are the children of T. C. Fletcher. The testator had no children, and T. C. Fletcher is a nephew, and the other plaintiffs grand-nephews of G. W. Cartwright, deceased.

The cause was referred to a referee, who heard the evidence and filed a report setting forth the findings of fact and conclusions of law thereon. The facts as found, pertinent to the controversy, are as follows:

14. "That the said Ida F. Cartwright in the exercise of her discretion, and as she thought best, sold some of the standing timber from the lands devised in the will of George W. Cartwright and received for said timber the aggregate sum of $8,886.28," etc.

15. "That the said Ida F. Cartwright during 1928 had some stables built on the land referred to in the will of G. W. Cartwright at a cost of $534.96 and the said stables increased the value of said land to that amount."

16. "That said Ida F. Cartwright died on 25 February, 1929, leaving a last will and testament."

17. "That the defendants are the duly appointed and qualified executrices of Ida F. Cartwright, deceased, and the residuary legatees and distributees named in the last will and testament of Ida F. Cartwright."

18. "That there were found in the safe-deposit box of said Ida F. Cartwright the following securities:

| | |
|---|---|
| Bonds, Virginia-Carolina Joint Stock Land Bank | $2,500.00 |
| Real estate 6 per cent bonds | 3,400.00 |
| Real estate 6 per cent bonds (Country Club) | 200.00 |
| 7 per cent preferred stock Atlantic Discount Corp. | 2,500.00 |
| 2 shares Pasquotank Hosiery Co. | 200.00 |
| 8 shares preferred stock Elizabeth City Hotel Corp. | 800.00 |
| | $9,600.00" |

19. "Prior to the death of G. W. Cartwright there was an account in the First and Citizens National Bank of Elizabeth City in his name, upon which both he and the said Ida F. Cartwright, as his attorney, drew from time to time; that after the death of George W. Cartwright, the said Ida F. Cartwright opened a bank account in her own name, in the First and Citizens National Bank of Elizabeth City, and also rented a safe-deposit box in said bank; that, prior to said George W. Cartwright's death she carried no account with said bank, and had no safe-deposit box therein, and did not, so far as the evidence discloses, carry any account, or have any safe-deposit box elsewhere; that, after opening said account the said Ida F. Cartwright deposited therein the moneys coming into her hands, as executrix of George W. Cartwright, deceased, the moneys arising from the sales of the timber aforesaid; and certain moneys of her own, arising from interest and dividends from her investments; from rents from the farm referred to in said George W. Cartwright's will for the years 1923 to 1928, inclusive, and from other sources; that, upon said account she from time to time drew checks, some being for claims against the estate of the testator, some for her own personal expenses or uses, and some for repairs to said farm, some in payment for the Atlantic Discount Corporation stock referred to in the preceding section, some in payment for the Virginia-Carolina Joint Stock Land Bank bonds, referred to in the preceding section, and some in payment for the $3,400 worth of real estate six per cent bonds referred to in the preceding section. That there is no evidence to show the exact sources from which were derived the funds which went into the purchase of any of said securities."

Upon the foregoing facts the referee concluded as follows: "That the plaintiffs are entitled to recover of the defendants as executrices of said Ida F. Cartwright the said sum of $8,886.28, being the amount received by said Ida F. Cartwright from timber sold by her from the lands devised in the will of G. W. Cartwright, together with interest on said amount from 25 February, 1929."

Exceptions to the findings of fact and conclusions of law were filed by both parties. Upon the hearing of the exceptions the court adjudged, among other things, that the plaintiffs have and recover of defendants the "further sum of $8,886.28 with interest thereon from 25 February, 1929, said recovery to be credited with the sum of $534.96 as of date of this judgment."

It was further adjudged that the securities found in the possession of Ida Cartwright at her death and set out in finding No. 18, be deposited with the clerk of the court, and that the judgment rendered should "constitute a lien upon all of said stocks, bonds and other evi-

dences of debt, and the same are ordered to be sold by John D. McMullan, Esq., who is hereby appointed a commissioner of the court for that purpose; and he is directed to make sale of said bonds, notes and other evidences of debt at the courthouse door in Elizabeth City, North Carolina, after first advertising said sale for at least three weeks in some newspaper published in Elizabeth City, and also at said courthouse door; and he will apply the proceeds of sale, less such commission as may be allowed him by the court, upon this judgment, in partial satisfaction thereof."

From the foregoing judgment the defendants appealed.

*McMullan & McMullan for plaintiffs.*
*M. Earl Woodhouse and Ehringhaus & Hall for defendants.*

BROGDEN, J. The briefs of the parties and the oral argument apparently limit the controversy to the value of the timber; hence the question of law may be stated as follows: Did the life tenant, Ida F. Cartwright, under and by virtue of the last will and testament of George W. Cartwright, have the power to sell the standing timber and use the proceeds thereof for her own benefit?

At the threshold of inquiry two theories of interpretation of the pertinent portions of the will of George W. Cartwright are manifest. The first theory is that item 2 of the will devises to Ida F. Cartwright a life estate in the entire property with remainder over to the plaintiffs. Furthermore, that standing timber is an integral part of the inheritance, and that, therefore, power to convey timber and appropriate the proceeds thereof results in clothing the life tenant with power to convey the fee, and thus destroys or certainly impairs and diminishes the estate of the remaindermen. Upon this aspect of the case the law, as announced in this jurisdiction, is expressed in *Griffin v. Commander,* 163 N. C., 230, 79 S. E., 499. The Court, quoting with approval the rule adopted by the New Jersey Court, said: "Where an estate for life is expressly given and a power of disposition is annexed to it, in such case the fee does not pass under such devise, but the naked power to dispose of the fee. It is otherwise in case there is a gift generally of the estate, with a power of disposition annexed. In this latter case the property itself is transferred. . . . The test in a case of this kind is whether the testator expressly limits the devise of the first taker to a life estate by specific language."

The general principle thus expressed is supported by many decisions in this jurisdiction, notably: *Long v. Waldraven,* 113 N. C., 337, 18 S. E., 251; *Chewning v. Mason,* 158 N. C., 578, 74 S. E., 357; *Darden*

*v. Matthews,* 173 N. C., 186, 91 S. E., 835; *White v. White,* 189 N. C., 236, 126 S. E., 612; *Roane v. Robinson,* 189 N. C., 628, 127 S. E., 626; *Cagle v. Hampton,* 196 N. C., 470, 146 S. E., 88; *Helms v. Collins,* 200 N. C., 89, 150 S. E., 676.

Planting themselves upon the principles of law announced in the foregoing decisions the plaintiffs assert that Ida F. Cartwright had the right to sell the timber upon the land and vest an indefeasible title thereto in the purchaser, but that when she received the proceeds of the sale of a part of the inheritance, she held the same as trustee for the remaindermen. Consequently, when she invested such proceeds in securities, the remaindermen are entitled to such securities remaining in her possession at her death. Hence, the question arises: Was Ida F. Cartwright a trustee for the remaindermen? Stripped of technicality and legal refinement, a trust rests upon duty; that is to say, if the power of disposition is to be exercised for a particular person or for a particular class, or for a specified purpose, it is the duty of the donee of the power to exercise it. This is illustrated by the case of *Ripley v. Armstrong,* 159 N. C., 158, 74 S. E., 961, and other cases of like tenor. The power in the *Armstrong case* was expressed in these words: "to use as he thinks best for the maintenance of our children." Here the power was to be exercised for the support of the children, and, consequently, a duty was thereby imposed upon the donee of the power to use the property for a specific purpose. In the case at bar, the power of disposition is not coupled with a trust.

The theory of interpretation of the will of George W. Cartwright asserted by the defendants, is that Ida F. Cartwright was authorized and empowered to sell the timber. Hence, her act in making the sale was rightful. Furthermore, as the power of disposition was general, she had a right to appoint herself as the beneficiary of the power upon the principle of law announced in *Hicks v. Ward,* 107 N. C., 392, 12 S. E., 318.

In the final analysis, the conclusion to be reached upon the facts must rest upon an interpretation of the will of George W. Cartwright, and, of course, all the law books teach us that interpretations of a given instrument ordinarily are as variable as the particular mental attitudes of interpreters.

At the outset, it is manifest that George W. Cartwright, having no children, was primarily solicitous of the comforts and welfare of his wife. This solicitude led him to give his entire estate to his wife for life. Moreover, in item 2 he devises the land and consequently the standing timber thereon to his wife for life with the remainder to the plaintiffs. This was a final disposition of his entire estate. But apparently

he was not satisfied with the final disposition so made, and consequently, in a succeeding and separate item of his will, wrote these words: "It is my will and desire that my said wife, Ida F. Cartwright, shall have the privilege to dispose of any or all of the standing timber on the lands herein devised as she may think best." Thus, he excepts the timber from the fee devised in item 2; that is to say, he severs the timber from the fee and authorizes his wife, the life tenant, to exercise uncontrolled dominion thereof. The court holds the opinion that the standing timber was severed by the testator from the fee and the absolute dominion thereof given the wife, and such severance was designed for her benefit rather than for the benefit of a nephew and grand-nephews and grand-nieces. Therefore, if Ida F. Cartwright, upon the sale of the timber, was entitled to hold the proceeds in her own right and as her own property, she had the power to invest the money in securities and to hold the same also in her own right. Consequently, by virtue of her will the defendants are entitled to the proceeds of the timber or the securities purchased by Ida F. Cartwright with such proceeds. The Court is not unmindful of the last paragraph in the opinion of *Darden v. Matthews,* 173 N. C., 186. However, that case involved the sale of the entire property, and the court was evidently proceeding upon the theory that the life tenant had only a naked power to sell without any suggestion of dominion or ownership of the proceeds of the sale.

Reversed.